## RUSSELL *v.* McKINNON.*

(Division B.   May 25, 1925.   Suggestion of Error Overruled June 8, 1925.)

[104 So. 294.   No. 24826.]

1. TAXATION.   *Tax sales in Jasper county in 1872 for taxes of 1871 void, because tax roll not filed as required.*

Tax sales in Jasper county in 1872 for taxes of 1871 are void, because tax roll was not filed on first Monday of June in 1871, as required by Laws 1871, chapter 38.

2. TAXATION.   *Tax sales in Jasper county in 1872 held void because time for payment extended.*

Tax sales in Jasper county, on April 1, 1872, are void, because time for paying taxes was extended to first Monday in May, 1872, by Laws 1872, chapter 10.

3. TAXATION.   *Evidence held to sustain finding that land in question had not been sold for taxes.*

Evidence tending to show alteration of tax records *held* to sustain finding that land in question had not been sold for taxes.

---

*Headnotes 1. Taxation, 37 Cyc., p. 1288; 2. Taxation, 37 Cyc., p. 1283; 3. Taxation, 37 Cyc., p. 1518.

APPEAL from chancery court of Jasper county, First District.

HON. G. C. TANN, Chancellor.

Suit by Bettie Corrine Russell, by Payton T. Chatham, guardian, against John T. McKinnon, wherein the defendant filed a claim for cross-relief.   From a decree for defendant, plaintiff appeals.   Affirmed.

*Bullard & Bullard* and *C. S. Street,* for appellant.

SALE BY THE TAX COLLECTOR ON APRIL 1, 1872.   This sale is challenged by appellee on three grounds:   (1) That the time for collecting tax had been extended until the first Monday in May, 1875, by chapter 10, Laws of 1872, approved March 16, 1872; (2) that by chapter 354,

Laws 1854, the property was exempt from taxation until February 27, 1874; and (3) that the assessment roll was not filed in time and was therefore void.

(1)   The answer to the first is two-fold.   In the first place by Article XII, section 9, Constitution 1869, it is provided that, ''No laws of a general nature, unless otherwise provided for, shall be in force until sixty days after the passage thereof.''

The act in question was not private legislation.  It had reference to the collection of the public revenue and had application to several counties.  It is a species of legislation generally held not to be special.  It is made to apply to all counties where the assessment rolls were not filed within the time designated and was to affect the general taxes, state and county, and affecting the state revenues in the manner it did it was a law affecting the revenues of the entire state.   The act could therefore have no operation until after the extended time for the connection.

But if mistaken in this the act had only the effect of extending the time within which the several tax collectors were required to complete their collections of all taxes, after which time he would be charged with it. It did not make any change in the means of collection, nor confer any new rights on the taxpayer.  Their tax was already delinquent when the act was passed and the act did not change the delinquency nor relieve the taxpayer of the effect of it.   There was no different time fixed for the sale of delinquent lands.   That was one only of the means the collector had of collecting it, and all the means of collection were left him by the act.   If he failed to resort to such means of collecting as he had, after the time limited in the act, liability would have attached to him, for after that time he had failed to make his collections and his failure to sell the land at the time required by law would have been no excuse to him.   Such must be the effect of the act if it is not held to operate as to the collection of tax on personal property only.   Any

other construction would render the last cause of it meaningless, viz., "But such collection and settlement then shall, in all respects, conform to law in such cases, in the same manner as if said time had not been extended."

To what law must the "collection" conform? The whole act must be construed, and that together with all other law on the subject, none of which was repealed or modified by it. The requirement to sell the delinquent land at the time required by law was one of them and the collector, by the terms of the act in question, was required to conform to it. The provision is that "Such collection shall, in all respects, conform to law in such cases, in the same manner as if said time had not been extended."

The owner of the land at that time claimed that it was exempt from taxation and made no effort to pay it. The land was delinquent and the tax collector sold it at the only time and in the only manner he was authorized by law to do.

(2) Chapter 354, Acts of 1854, does not seem to exempt the Southern Railroad from taxation until February 27, 1874, but the exemption has no application to the property in question. The land is and has always been wild, timbered land located twelve or fifteen miles from the railroad. When the benefit of such exemption is claimed the burden is always on the railroad to show that the property claimed as exempt was used in the operation of the railroad, that is in the performance of the public duties for which it is chartered, for the benefit of which such exemption is granted. It made no effort to meet this requirement, but on the contrary appellant proved that it was not such property, and the evidence of the appellee shows that the railroad kept the land until the exemption claimed had expired, if it had existed, and soon afterward sold it for profit. Property of this sort, held for such purposes is never exempt. This proposition is too well settled to justify quotation

of lengthy authority and we content ourselves with citing the following which are conclusive: *M. & O. R. R. Co. v. Moseley*, 52 Miss. 127; *Lewis* v. *V. & M. R. R. Co.*, 67 Miss. 82, 6 So. 773; *McCullough* v. *Stone*, 64 Miss. 378, 8 So. 236; Cooley on Taxation, 151, 149, 150 and notes; 37 Cyc., 917 and notes.

(3)    There is nothing in the record to show that the assessment roll was not filed in time as alleged in the answer.    The first reference to the assessment roll contained in the evidence is in an order of the board of supervisors passed at the September meeting, 1871, wherein it was "ordered by the board that the assessment rolls, now on file in this court, be held open for inspection by the taxpayers until the first Monday in October, 1871," etc., page 105.    There was no reference to when it had been filed, when or by what authority it was made up, nor is it shown how many rolls were made or attempted to be made that year, and it is not shown that the tax of that year was levied and collected under any roll made in 1871, the burden of all which is on the appellee.

In his answer respondent cites *Mitchum* v. *McInnis*, 60 Miss. 945, wherein it was held that a tax sale of the year 1874 was void because, "The assessor failed to return the roll at the time prescribed by law."    This the court held and nothing more.    How that can avail appellee we cannot see.    Neither he nor appellant were parties to that suit and what was done or not done in it in no way affects them.    That case was decided on the facts then before the court and the facts before the court in that case were far different from the facts now before the court in this case.    The law of that case may be binding on us, but the facts are not.    If the assessment roll under which the sale of 1872 was made was invalid the burden was on the appellee to show it.    This he has not met and it is submitted that the sale of that year is valid.

THE SALE OF MAY 10, 1875, UNDER THE ABATEMENT ACT. We submit that the sale of April 1, 1872, was valid, but

its invalidity in no way affects that of May 10, 1875. The validity of a sale under the abatement act did not depend upon the validity of the sale by which the state had pre-- viously held. *Cochran* v. *Baker,* 60 Miss. 282; *Cato* v. *Gardner,* 62 Miss. 373.; *Sutton* v. *Nevin,* 2 Miss. Dec. 409.

A certified copy of the official list of lands sold to the state on May 10, 1875, was filed. The clerk while testi- fying was shown the book containing the official list show- ing these sales by counsel for appellee and asked if he found the lands in question thére and he answered that they were. The patent from the state to S. D. Russell was admitted and it was agreed that the lands in ques- tion passed to appellant in the partition of the estate of S. D. Russell. This made her title complete. The only evidence offered in impeachment of this sale was the alleged duplicate receipt in an attempt to prove that the V. & M. R. R. Co. had paid the tax for 1874, in which event the lands would not be subject to sale on May 10, 1875. The name of the Southern Railroad was changed in 1867 to the V. & M. R. R. but in all other respects it was the same company.

Now the appellee, in his answers, states as the reason why the tax was not paid on these lands until the year 1875, that it was claimed that the property was exempt from taxation, while in his evidence he sought by an in- sufficient document to induce the court to find that the railroad had paid a tax it had not paid because it claimed the exemption. Moreover, this issue was not made in the pleadings, but the sale of May 10th was denied and if made it was alleged that the land was exempt in 1874, and therefore not subject to sale in 1875. No claim of payment was made in the answer but non-payment at- tempted to be excused because of the exemption claimed. This attempted proof was therefore in contradiction of the answer. But it is otherwise incompetent. The clerk was unable to identify it as having been a record of his office, hard as he tried. There was nothing to show that it was an official record, without which it was not ad- missible.

An official tax receipt signed by the tax collector, is made by law the only admissible evidence of the payment of tax. Appellee made no effort to produce such receipt, but asks this court to presume, from what he had produced that the tax of 1874 was paid, and that by a railroad denying the liability. Sec. 4332, Code 1906, prescribes that the only evidence of the payment of taxes that may be received is the prescribed, official receipt issued by the tax collector. See *Edmonson* v. *Ingram,* 68 Miss. 32.

DAMAGE FOR SUING OUT INJUNCTION. If it should be held that the appellee is entitled to the land it was error under the evidence to allow any damage. The lower court properly held that he was not entitled to any damage by way of attorney's fees or other damage about the dissolution of the injunction. The only question tried was that of title and the purpose of the injunction was to preserve the property until that question could be tried. The following authorities settle this question. *Howell* v. *McLeod,* 89 So. 774; *Mims* v. *Swindle,* 124 Miss. 686, 87 So. 151. Upon the foregoing it is submitted that the decree of the lower court should be reversed and a decree entered here in accordance with the prayer of the original and amended bills.

*Neville & Stone,* for appellee.

TAX SALE OF APRIL 1, 1872. If there was any such sale it was void for the following reasons: 1. Because the tax assessor of Jasper county did not file his roll with the board of supervisors on the first Monday in June, 1871, as was required by Act approved May 11, 1871. (Acts 1871, p. 96) Defendant introduced the minutes of the board of supervisors which showed that the assessment roll of 1871 was not filed with the board of supervisors until September, 1871. The supreme court of Mississippi decided in *Mitchum* v. *McInnis,* 60 Miss. 945, that the tax sales in Jasper county in 1872 for the taxes of

1871 were void, because the roll was not filed on the first Monday in June, 1871.

2. Because the land in controversy belonged to the Southern Railroad Company in 1871 and was exempt from taxation by section 15, chapter 354, Acts of 1854. The defendant introduced on the trial chapter 12 of the Acts of 1846, approved February 3, 1846, incorporating the Southern Railroad Company. Solicitors for complainant rely upon *M. & O. R. R. Co.* v. *Moseley,* 52 Miss. 127, to support their contention that section 15, chapter 354, Acts 1854, did not exempt from taxation the lands in controversy. One statute exempts only "a portion of said railroad," and the other exempts the "stock, fixtures and property."

3. The sale on April 1, 1872, was also void because the time for paying taxes in Jasper county was extended to the first Monday in May 1872, by chapter 10, Acts of 1872.

We think it plain that the contention that the above act is a law of a "general nature" is wholly without merit. It applies only to the ten counties therein named. Furthermore the act itself provides "That this act take effect and be in force from and after its passage." So that, it was "otherwise provided" that the Act should take effect and be in force "from and after its passage." It appears from the preamble of the act that the assessment rolls of the county of Jasper and the other counties named "were returned at too late a date to admit of the collection of the taxes in said counties within the time prescribed by law.

Surely a taxpayer could not pay his taxes before the tax rolls were filed and approved; and just as certainly a taxpayer could not be in default in the payment of his taxes, at a time when no taxes had been legally assessed against him. It would be shocking to every sense of right and justice to hold that property could be sold for taxes before the taxes were legally assessed and before its owner had had an opportunity to pay such taxes.

And, furthermore, there is no competent evidence in record showing that a sale was made to the state on April 1, 1872. The appellant offered in evidence a list of lands which purported to be a list of lands sold to the state on said date but there was no certificate of the tax collector to this list; and under *Mayson* v. *Banks,* 59 Miss. 447, a list of lands "without signature, certificate or authentication of any kind by the sheriff or other person, is insufficient to show title in the state."

SALE OF MAY 10, 1875, UNDER THE ABATEMENT ACT. The testimony in this case demonstrated that the property in controversy was not sold under the Abatement Act. The contention of the appellee in the lower court was that some one had attempted to change the figure "9" in section "29" to the figure "8," so as to make it "28" instead of "29," on the record in the chancery clerk's office, containing a list of lands sold in Jasper county on May 10, 1875, under the Abatement Act. The chancellor examined this figure under a magnifying glass and in his decree he held "that said lands were not sold by the tax collector of Jasper county, Mississippi on May 10, 1875, under the Abatement Act of 1875. (Tr. 66).

The land commissioner certified that the lists of lands sold under the Abatement Act and introduced in evidence by the appellee was a true and correct copy of both the original list in his possession and the list recorded in his office. The appellee also introduced a photographic copy of the original list in the possession of the state land commissioner. So that, the list recorded in the office of the land commissioner and the original list made by the tax collector of Jasper county in 1875 show that the southeast quarter and east one-half, northeast quarter of section 29, township 4, range 13, was sold under the Abatement Act, and not the northeast quarter of southeast quarter of section 28, township 4, range 13.

In addition to all this convincing evidence offered by the defendant to prove that the southeast quarter, north-

east quarter of section 28, township 4, range 14, was
not sold under the Abatement Act, he also proved con-
clusively that the V. & M. R. R. Company paid the taxes
on the said lands for the year 1874; and therefore said
lands were not subject to the Abatement Act and could
not have been legally sold on May 10, 1875. Solicitors
for complainant cite *Colrane* v. *Cox,* 60 Miss. 547, in sup-
port of their contention that the chancery clerks were
made the custodians of the original lists of lands sold
to the state.

This case holds that under the Abatement Act the list
of lands were to be delivered to the chancery clerks in-
stead of the circuit clerks, as was provided for by sec-
tion 1698, Code 1871, and section 2, chapter 24, Laws
1875. In other words the Abatement Act made the chan-
cery clerk's office the place where the record books con-
taining lists of lands sold to the state were kept, instead
of the circuit clerk's office, as theretofore. This does
not touch the question now under consideration—that
is who made was the final custodian of the original list of
lands sold to the state under the Abatement Act—not
to whom the list was delivered by the tax collector for the
purpose of recording it in a book.

The original list of lands sold to the state by the tax
collector of Jasper county on May 10, 1875, under the
Abatement Act is now in the possession of the state land
commissioner, who received it from the auditor of public
accounts, pursuant to chapter 67, Laws of 1892, which
provides for the transfer of all land records from the
auditor's office to the land commissioner's office and this
original list shows that the lands in controversy were not
sold on May 10, 1875.

ADMISSIBILITY OF DUPLICATE TAX RECEIPT. The chan-
cery clerk testified that the book containing duplicate
receipt No. 1749, dated January 30, 1875, was in his
custody as chancery clerk; that it was a part of the rec-
ords of his office; that duplicate receipt No. 1749, issued
to the V. & M. R. R. Company and dated January 30,

1875, was in the handwriting of his father, who was tax collector of Jasper county in 1875. See section 1695, Code 1871. The law at the time this duplicate receipt was made provided that the duplicate tax receipt should be "filed in the office of the chancery clerk for reference."

Under the facts disclosed by the record in this case we submit that the court would presume that the taxes for 1874 were paid, if there were no evidence of the payment of such taxes. The Abatement Act required the tax collectors to sell on May 10, 1875, all lands that had been sold to the state for taxes prior to 1874, and on which taxes for 1874 had not been paid. It will be presumed that the tax collectors did their duty and complied with the law. If property sold to the state prior to 1874 was not sold on May 10, 1875, the presumption is that the taxes for 1874 were paid. This presumption is naturally strengthened in this case by the proof that the lands in controversy have been assessed by the taxing authorities of the state continuously since 1875 and that state and county taxes have been paid every year during that period; and that the lands in controversy were not on the lists furnished the chancery clerk by the auditor in 1880 and 1890; and were not on the list furnished by the auditor to the state land commissioner, pursuant to section 3866, Code of 1892. The main purposes of the lists were to "systematize the records of state tax lands" and to place on the records in every county a complete list of lands owned by the state. Any one desiring to purchase lands from an individual could consult these lists to ascertain if the state claimed title to the lands. If the intending purchaser did not find the lands on these lists, he had a right to assume that the lands were not claimed by the state.

It is common knowledge that very few original tax receipts issued prior to 1875 are now in existence; and it is also common knowledge that in most of the counties in the state, the duplicate tax receipts for the years prior to 1875, are not now available. Fortunately, the books

containing the duplicate receipts for 1874 were found in this case.

Finally we submit that if it be granted for the sake of argument that the state acquired title to the lands in controversy in 1872 or 1875, the conclusive presumption is, under the facts in this case that the state had parted with its title long prior to August 11, 1917, the date of the patent from the state to S. D. Russell.

As has been stated above the lands in controversy were not included by the auditor in any of the lists furnished the chancery clerk; the lands were assessed to private owners every year subsequent to 1875 and the proof shows that all taxes were paid by private persons since 1875. Under these facts the presumption is that the state had parted with its title. This doctrine was announced by the supreme court of Mississippi in *Caruth v. Gillespie,* 68 So. 927.

The only difference between the case at bar and *Caruth v. Gillespie, supra,* is that in the Caruth case the proof showed that the property had been in adverse possession for a number of years, while there is no such proof in the case at bar, but we submit that the fact of possession is not material on the question as to whether or not the court will indulge the presumption that the state had parted with its title. The facts which produce this assumption are: the assessment of the property for a long period of time to private parties; the collection of taxes by the state, and the failure of the state to include the land in the lists prepared by the auditor, and delivered to the chancery clerk under the Acts of 1880 and 1890, and the failure of the auditor to include the land in the list furnished to the land commissioner under section 3866, Code of 1892.

Argued orally by *Geo. B. Neville,* for appellee.

HOLDEN, P. J., delivered the opinion of the court.

The suit involves the question of title to forty acres of land described as northeast quarter of southeast quar-

ter, section 28, township 4, range 13 east, Jasper county, Miss., and was started by a bill in chancery filed by appellant, Bettie Corrine Russell, against J. T. McKinnon, appellee, to cancel claim of title, and to restrain appellee from cutting timber upon the land. The appellee filed an answer denying the allegations of the bill, and asked that the claim of title by the appellant be canceled as cross-relief. Upon a final hearing of the cause, the chancellor denied the relief prayed for in the original bill, and granted the relief prayed for by cross-complainant, from which this appeal is prosecuted.

Briefly stated the case is this: The appellant Bettie Corrine Russell claimed title by purchase from the state in 1917, and alleging that the state acquired title to the land under a tax sale for the taxes of 1871, and also that the state acquired title to the land by a tax sale on May 10, 1875, under the provisions of the act known as the Abatement Act, Laws 1875, p. 11.

The defendant below, appellee here, contested appellant's claim of title upon several grounds, namely, that the land in controversy was not subject to sale for taxes in 1871 because it belonged to the Southern Railroad Company in 1871, and was exempt from taxation by section 15, chapter 354 of the Laws of 1854, which granted to this railroad an exemption from taxation for a period of twenty years. And second, because the tax assessor of Jasper county did not file his roll with the board of supervisors on the first Monday in June, 1871, as was required by act approved May 11, 1871 (Laws 1871, chapter 38). And third, that as a matter of fact the land in controversy was not sold for taxes in 1875 under the said Abatement Act.

This court in the case of *Mitchum* v. *McInnis*, 60 Miss. 945, held that the tax sales in Jasper county in 1872 for the taxes of 1871 were void, because the roll was not filed on the first Monday in June, 1871. Furthermore, the sale of the land for taxes on April 1, 1872, was void, because the time for paying taxes in Jasper county was

extended to the first Monday in May 1872, by chapter 10 of the Laws of 1872.

The sale of the land in 1872 for the taxes of 1871 having been declared void as stated above, it is unnecessary for us to consider the other point as to whether or not the lands were exempt from taxation for the year 1871, on account of the exemption granted the Southern Railroad Company, which appears to have been the owner at that time.

The proof offered by the complainant below tending to show the sale of the lands in 1872 for the taxes of 1871 was rather indefinite and doubtful, but, conceding its sufficiency for the purpose it was offered, we do not hesitate to say that the sale was void as held by this court in the above case. The record discloses that the appellee and his predecessors in title have owned the land for about fifty years, and have paid taxes thereon during this time.

The claim of title by appellant on account of the alleged sale in 1875 for the taxes of 1874 under the Abatement Act is without merit, because the chancellor held as a matter of fact "that said lands were not sold by the tax collector of Jasper county, Miss., on May 10, 1875, under the Abatement Act of 1875."

It appears that, on the hearing of the cause, the chancellor carefully examined, with a magnifying glass, the list containing the lands sold in Jasper county on May 10, 1875, under the Abatement Act, and he found that the figure "9" in section "29" had been changed, or forged, to the figure "8," so as to make the section road "28" instead of "29" on the record in the chancery clerk's office. The chancellor was well warranted in finding the fact to be that the land here in question, viz., the forty acres in section 28, was not sold for taxes in 1875 under the Abatement Act but, that it was land in section 29 that was thus and then sold, as appears from the list and the records in the chancery clerk's office. Therefore the state obtained no title to the land by the tax sale

in 1875 under the Abatement Act, consequently, the title of the appellee, obtained through mesne conveyances from the Southern Railroad Company, to the land here involved is valid, and the claim of title by the appellant is wholly without merit.

In view of these conclusions, the decree of the lower court is affirmed.

*Affirmed.*